IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAVANNA SPENCER, | : | CIVIL ACTION NO. **3:CV-07-0101** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CO ZIMMERMAN, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

Plaintiff, Ravanna Spencer, formerly an inmate at the State Correctional Institution at Camp

Hill, Pennsylvania, filed this § 1983 civil rights action, *pro se*, on January 19, 2007.  (Doc. 1).[1]

Plaintiff filed a support Memorandum with an attached exhibit.  (Doc. 2).  Plaintiff also filed two

motions  for leave to proceed *in forma pauperis*.  (Docs. 3 and 7).  Plaintiff, in his Complaint,

_____

[1] Plaintiff Spencer  filed a previous civil rights action with this Court docketed to Civil No. 06-1099, M.D. PA.  We issued two Report and Recommendations ("R&R") in the 06-1099 case on January 17, 2008 and January 22, 2008, recommending that the case be dismissed as to Defendants Newton and Kalsky for Plaintiff's failure to exhaust his DOC Administrative remedies with respect to his claims against them.  On March 31, 2008, the District Court adopted in part our R&R's but did not adopt our recommendations that Defendant Newton's and Defendant Kalsky's Summary Judgment Motions be granted for Plaintiff's failure to exhaust his DOC Administrative remedies with respect to his Eighth Amendment claims against them, and remanded the case to us for further proceedings.  (Docs. 112, 113 and 121 case # 06-1099).  We have directed the filing of supplemental summary judgment motions and briefs in Plaintiff's case # 06-1099.

After the instant case was filed, Plaintiff was transferred from SCI-Camp Hill to  SCI-Fayette located in the Western District of Pennsylvania.  However, on April 8, 2008, Plaintiff advised this Court that he was temporarily transferred from SCI-Fayette to SCI-Waymart, and that he is presently confined at SCI-Waymart.  (Doc. 35; Doc. 122, case # 06-1099).

named three (3) Defendants employed with the Pennsylvania Department of Corrections ("DOC")

at SCI-Camp Hill.   Specifically, Plaintiff named as Defendants Corrections Officer ("CO")

Zimmerman, CO Ayers, and Lt. Kreider, who were all staff members at SCI-Camp Hill.  (Doc. 1, p.

1).  Plaintiff's five-page handwritten Complaint contained numerous claims against Defendants,

which we previously counted to be approximately 15.[2]

We initially reviewed the Plaintiff's pleading and found that it failed to state various

constitutional claims which Plaintiff attempted to assert.[3]   We found that only Plaintiff's First

Amendment claim of retaliation against all three Defendants and his Fourteenth Amendment equal

protection claim against all three Defendants should proceed.  We found that all of Plaintiff's other

---

[2]In his Complaint, Plaintiff indicated that he did not fully exhaust the grievance procedure available at SCI-Camp Hill. (Doc. 1, p. 4, ¶ 9.).  Plaintiff stated that he filed a grievance alleging, in part, that Defendants issued a false misconduct against him and that the grievance coordinator rejected his grievance because he was advised that he could not grieve a misconduct.  Thus, Plaintiff concluded that he was denied the opportunity to exhaust his claims. We previously noted that Plaintiff's numerous other claims that did not involve the claim that Defendants issued a false misconduct against him had also, seemingly, not been exhausted.

Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*   However, as we noted in our initial R&R, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

[3]Plaintiff filed two applications to proceed *in forma pauperis* pursuant to  28 U.S.C. § 1915.  The Prison Litigation Reform Act of 1995, (the "PLRA"), obligated the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (Docs. 3 and 7).

claims against Defendants failed to state viable constitutional causes of action and recommended that these other claims be dismissed.  We thus issued a R&R on March 5, 2007, in which our stated findings, namely that Plaintiff was unable to maintain this action as to all of his Constitutional claims, except for his First Amendment retaliation claims and his Fourteenth Amendment equal protection claim against the three Defendants, were presented as recommendations for the District Court. (Doc. 11).[4]

On April 9, 2007, the District Court dismissed Plaintiff's objection to our R&R, and adopted our stated recommendations.  (Doc. 14).  Subsequently, we issued an Order on April 10, 2007, and granted Plaintiff's *in forma pauperis* motions and directed service of Plaintiff's Complaint on the three Defendants.  (Doc. 15).  The Summons was issued and all three Defendants executed waiver of service forms.   (Doc. 16).   On June 11, 2007, Defendants jointly filed an Answer to the Complaint with Affirmative Defenses, including  immunity and Plaintiff's failure to exhaust his Administrative remedies as required by the PLRA.  (Doc. 20).

The time period allotted for discovery has expired and Defendants timely filed a Summary Judgment Motion on October 18, 2007.  (Docs. 22 and 26).  Defendants filed their support Brief, Statement of Material Facts ("SMF") and exhibits on October 26, 2007.  (Docs. 27, 28 and 29, respectively).  Plaintiff filed his opposition Brief with two attached exhibits, Exs. B-1 and B-2, on November 5, 2007.  (Doc. 31).  Defendants filed their Reply Brief on November 15, 2007.  (Doc. 32).

---

[4]The undersigned was assigned this case for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1).

Defendants assert only one argument in support of their Summary Judgment Motion, namely that Plaintiff did not exhaust his DOC Administrative remedies with respect to his remaining claims, *i.e.* his Fourteenth Amendment equal protection claim against all three Defendants and his First Amendment retaliation claim against all three Defendants.

## II.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).[5]

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id*.  Each named defendant must be shown, through the complaint's

---

[5]It is not disputed that the three Defendants are all state actors for purposes of this §1983 action.

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*  With these principles in mind, Plaintiff's allegations with respect to the Defendants will be discussed.[6]

## III. Allegations of Complaint.[7]

Plaintiff averred that a June 10, 2006 search of his cell by Defendants Zimmerman and Ayers violated DOC policy since no ranking officer was present.  Plaintiff averred that Defendant Kreider did not follow DOC policy and was grossly negligent in failing to supervise the search by Zimmerman and Ayers.  Plaintiff alleged  that this was all done based on harassment, retaliation, and racial discrimination of a mentally disabled inmate.  Plaintiff stated that he asked Defendant Kreider why he let Zimmerman and Ayers ransack his cell, and Kreider sang a racially derogatory song.  Plaintiff alleged that Defendants Zimmerman and Ayers put Nazi signs on his cell walls,

---

[6]As we previously noted, Plaintiff is deemed as being well-aware of the requirements of a civil rights action and the Local Rules of this Court based on his prior case pending with this Court, 06-1099.

[7]We state only Plaintiff's allegations in his Complaint relevant to the remaining claims against Defendants.

ransacked his cell, and scattered his property around his cell, and that this was an unreasonable search in violation of the Fourth Amendment.  Plaintiff averred that Defendants Zimmerman and Ayers issued a false misconduct against Plaintiff, and that Defendant Kreider signed off on it in order to prevent Plaintiff from filing a grievance against them, in violation of his First Amendment right. Specifically, Plaintiff alleged that Defendants issued the false misconduct against him to prevent him from filing a grievance against them, since under DOC policy, misconducts are non-grievable issues.

Plaintiff alleged racial discrimination against Defendants Zimmerman and Ayers since they wrote Nazi signs on his cell walls.  Plaintiff alleged retaliation by Defendant Kreider because he filed grievances against this Defendant.  Plaintiff alleged that his First Amendment right to access to the courts was deprived since he could not file a grievance against Defendants and exhaust his Administrative remedies, and that Defendants' false misconduct against him prevented him from filing a grievance against them about their cell search because under DOC policy, misconducts are non-grievable issues.[8]

Plaintiff alleged that Defendants violated the equal protection clause because he is a black mentally disabled person, and that Defendants treated him differently than other similar inmates, since the other inmates with disabilities did not have to worry about retaliation and being set up with a false misconduct report and slander.

As relief, Plaintiff sought  injunctive relief against Defendants in their official capacities and monetary relief against Defendants in their individual capacities.  Plaintiff requested $25,000 in

---

[8]As discussed above, all of Plaintiff's claims were dismissed by the District Court except for his Fourteenth Amendment equal protection claim against the three Defendants and his First Amendment retaliation claim against the three Defendants.

compensatory damages from each Defendant and $25,000 in punitive damages from each Defendant.  (*Id.*, pp. 4-5).

Plaintiff's relief requests for $25,000 damages was stricken from the Complaint by the District Court.   To the extent that Plaintiff was seeking damages for pain and suffering either under § 1983, such relief request was  dismissed by the District Court.

## IV.  Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.   Fed.R.Civ.P. 56(c).  An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862

F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

## V. Discussion.

Plaintiff alleged that the June 10, 2006 cell search by Defendants Zimmerman and Ayers violated DOC policy since no ranking officer was present, and that Defendant Kreider did not follow DOC policy and was grossly negligent in failing to supervise Zimmerman and Ayers.  Plaintiff claimed that these actions were taken based on harassment, retaliation, and racial discrimination of a mentally disabled inmate.  Plaintiff claimed that, during the search, Defendants Zimmerman and Ayers put Nazi signs on Plaintiff's cell walls, ransacked his cell, and scattered his property around his cell.  Plaintiff stated that when he asked Defendant Kreider why he let Defendants Zimmerman and Ayers ransack his cell, Kreider sang a racially derogatory song.   Plaintiff claimed that  Defendants Zimmerman and Ayers issued a false misconduct against Plaintiff after the cell search incident, and that Defendant Kreider signed off on it in order to prevent Plaintiff from filing

a grievance against them, in violation of his First Amendment right.  Plaintiff alleged that Defendants issued the false misconduct against him to prevent him from filing a grievance against them, since under DOC policy, misconducts are non-grievable issues.[9]

Insofar as Plaintiff alleged that Defendants issued a false misconduct against him to thwart his attempt to file a grievance against them, this contention was found not state a Constitutional claim, since an inmate has no Constitutional right to a grievance process.  Also, Plaintiff's claim that the June 10, 2006 search of his cell violated the Fourth Amendment was dismissed.

Plaintiff alleged  racial discrimination against Defendants Zimmerman and Ayers since they wrote Nazi signs on his cell walls.  Plaintiff alleged that all three Defendants violated the Equal Protection Clause.  Plaintiff was deemed as averring  that  he was in a protected class since he was a black mentally disabled person and that Defendants treated him differently than other similar inmates, since the other inmates did not have to worry about retaliation and being set up with a false misconduct report and slander.  (Doc. 1, p. 4, ¶ 7.).

Plaintiff asserted that his Fourteenth Amendment right to equal protection was violated by Defendants since he was  being treated differently than other similar inmates, *i.e.* inmates who are black and had mental disabilities, since the other similar inmates did not have to worry about retaliation, and being set up with false misconduct reports and being subject to slander.  (*Id*.). Plaintiff averred that Defendants treated him differently than similarly situated inmates who were

---

[9]As we previously noted, Plaintiff stated in his Complaint  that this was the reason why he could not fully exhaust his DOC administrative remedies with respect to his claims. Specifically, Plaintiff stated that he was not allowed to file a grievance alleging that Defendants issued a false misconduct against him since he was advised that misconducts were not grievable issues.

black and had disabilities.  Plaintiff also alleged that Defendants made racial comments and slurs to him,  and that Zimmerman and Ayers wrote Nazi signs on his cell walls during their search of his cell on June 10, 2006.

We found that the § 1983 Equal Protection claim against Defendants should proceed because the Plaintiff alleged  that Defendants purposely discriminated against him on the basis of his race, gender, or nationality.   Plaintiff claimed  that Defendants were  motivated by a discriminatory intent with respect to Plaintiff's allegations.  Plaintiff alleged  that he was harassed and retaliated against because of his race. (*Id.*, p. 3, ¶ 4.).  He stated  that the Nazi signs of his walls were another form of racial discrimination by Defendants in addition to the verbal slurs.  (*Id.*, ¶ 3.).  Plaintiff claimed  that Defendants called him "retarded nigger" and "monkey boy." (*Id.*, p. 2).  Plaintiff claimed  a discriminatory motive for Defendants' alleged conduct.  Additionally, we found that Plaintiff properly stated that he and other inmates were similarly situated for purposes of an equal protection claim.

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

Therefore, we recommended, in part, that Plaintiff's Fourteenth Amendment equal protection claim against Defendants proceed, and the District Court adopted this recommendation.

Plaintiff alleged retaliation by Defendant Kreider because he filed grievances against this Defendant.  Plaintiff alleged that he was deprived of his First Amendment right to access to the

courts, since he could not file a grievance against Defendants and exhaust his Administrative remedies, and that Defendants' false misconduct against him prevented him from filing a grievance against them about their cell search because under DOC policy, misconducts are non-grievable issues. (*Id.*, p. 3, ¶'s 3.-4.). Since Plaintiff did not allege any actual injury or adverse action with respect to his First Amendment access to courts claim against Defendants, the District Court dismissed this claim.

The District Court also found that Plaintiff stated a retaliation claim against Defendants. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Since Defendants have properly filed their SMF in support of their Summary Judgment Motion (Doc. 28), as required by Local Rule 56.1 of M.D. Pa. and their facts are all properly supported evidence, we shall adopt as our own all of Defendants' facts contained in their SMF that are supported by citation to evidence and that are not disputed by Plaintiff in his opposition Brief and through his evidence, *i.e.* his Exhibits. (Doc. 31). We agree with Defendants (Doc. 32, pp. 1-3) and find that Plaintiff, in his response to Defendants' SMF contained in his Brief (Doc. 31), has not properly responded, paragraph by paragraph, to any of Defendants' SMF as required by Local Rule 56.1 of M.D. Pa. (Doc. 28).[10] Defendants have shown that Plaintiff did not fully and properly exhaust his DOC administrative remedies with respect to his remaining First and Fourteenth Amendment claims against them. Since Defendants' SMF are supported by evidence and since Plaintiff has not properly responded to them, we shall accept all of Defendants' SMF as undisputed.

---

[10]As noted Plaintiff was deemed as being well aware of all of the Local Rules of this Court based on his prior case he filed in the M.D. Pa., #06-1099.

We shall incorporate them herein by reference and shall not repeat them herein.  (Doc. 28, ¶'s 1.-24.).

As discussed above, Plaintiff alleged violations of his First and Fourteenth Amendment rights. Plaintiff states that he was "retaliated on with a false misconduct for filing grievances" against staff, and that the "false misconduct" issued against him on June 10, 2006 was dismissed.   (Doc. 31, p. 1).  Plaintiff states that at page 7 of their initial Brief in support of their Summary Judgment Motion (Doc. 27, p. 7), Defendants concede that an inmate cannot appeal a finding of not guilty with respect to a misconduct report and they cite to DC-ADM 801("An inmate cannot appeal a finding of not guilty.").  (Doc. 31, p. 1 and Doc. 31, Ex. B-1).  Plaintiff states that "this alone shows that Plaintiff exhausted his remedies." (*Id*., p. 2).  Plaintiff states that his "retaliation claim involved the filing a false misconduct on him for grievances he filed on the Defendants therefore Plaintiff claims are not addressable through the grievance system ... ."  (*Id*.).  Plaintiff states that "both inmate discipline and Administrative custody procedures are non-grievable issues ... ." (*Id*.).  Plaintiff states that since he was complaining about a misconduct report Defendants issued against on him June 10, 2006, an inmate discipline  issue, he had no Administrative remedies available.  (*Id*.).  Plaintiff also states that on page two of his June 14, 2006 Grievance #155353, he clearly stated that he was not grieving the misconduct issued against him.  (*Id*.).  However, he states that the prison rejected his stated grievance notwithstanding his statement that the "misconduct was dismissed but that is not what I'm grieving... ."  (Doc. 31, Ex. B-2).  Plaintiff did raise claims in his June 14, 2006 Grievance #155353 that Defendants were retaliating against him and that they were discriminating against him in violation of the Equal Protection Clause.  (*Id*.).

Plaintiff does not argue that he could not exhaust his Fourteenth Amendment Equal Protection claim, and he does not state that this claim was non-grievable.  Based on Defendants' uncontested evidence, it is clear that Plaintiff's Fourteenth Amendment Equal Protection claim against Defendants should be dismissed due to Plaintiff's failure to exhaust this claim.  Plaintiff only states that he could not exhaust his grievance to the extent that it claimed retaliation with respect to the misconduct issued against him since an inmate cannot file a grievance regarding a misconduct.  While Plaintiff states that his June 14, 2006 Grievance #155353 stated that he was not grieving the misconduct Defendants issued against him which was dismissed, his June 14, 2006 Grievance #155353 also stated that the issuance of the "bogus misconduct" by Defendants put him on restriction and denied him the ability to properly make it through a prison program.  (Doc. 31, Ex. B-2).

Further, Plaintiff states that "his claims are valid for discrimination and retaliation because he was black also because no other white inmate was disciplined with falses (sic) misconducts and undue restrictions."  (Doc. 31, p. 2).

Defendants solely argue that summary judgment should be granted as to both of the Plaintiff's claims against them  because the Plaintiff failed to exhaust his administrative remedies prior to filing suit.  (Doc. 27, pp. 5-8).  Defendants do not argue, in the alternative, that even if the Plaintiff had exhausted his administrative remedies, his First and Fourteenth Amendment claims lack merit based on the undisputed facts.  (Doc. 27, pp.  4-8).  Thus, we address only the exhaustion issue herein.

Since, as stated, Defendants have filed their SMF in support of their Summary Judgment Motion (Doc. 28, ¶'s 1.-24.), and their facts are properly supported by citation to evidence, we shall adopt as our own all of Defendants' facts contained in their SMF that are supported by citation to evidence and that are not disputed by Plaintiff in his opposition Brief and through his evidence, *i.e.* his Exs. B-1 and B-2. (Doc. 31 and Doc. 29, Ex. B-2).  To the extent that Plaintiff's evidence disputes Defendants' facts detailed in their SMF, we shall not adopt Defendants'  facts as our own.[11]

As stated, Plaintiff did not file a proper response to each and every paragraph of Defendants'  SMF as required by Local Rule 56.1, MD. Pa.  Rather, Plaintiff filed his opposition Brief to Defendants' Summary Judgment Motion and argues why he should be excused from exhaustion of his claims.  (Doc. 31).  While Plaintiff titles his argument in his brief as both argument and a  SMF, he does not properly respond  to each and every paragraph of Defendants' SMF as required by Local Rule 56.1.  Thus, we agree with Defendants (Doc. 32, pp. 1-3) that Plaintiff has not properly responded paragraph by paragraph to each and every one of Defendant's current SMF as he was required to do by Local Rule 56.1.

We find that since Plaintiff, in his opposition Brief (Doc 31), has not properly responded to Defendants' SMF as required by Local Rule 56.1 of M.D. Pa., Defendants' SMF should be deemed admitted. Defendants have offered evidentiary support for their stated factual paragraphs contained in their SMF.  (Doc. 28, pp. 1-6).  Therefore, we will accept the stated facts contained in

---

[11]As Defendants state in their Brief (Doc. 27, p. 2), and as indicated above, Defendants have previously asserted as an affirmative defense in their Answer to the Complaint that Plaintiff failed to exhaust his DOC administrative remedies with respect to his remaining § 1983 claims.

Defendants' SMF (*Id.*) that are supported by their evidence and that are not controverted by Plaintiff's evidence (*i.e.* Plaintiff's Exs. B-1 and B-2, Doc. 31), and we will adopt them as our own herein. *See U.S. ex rel. Paranich v. Sorngard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[12]

In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5, (M.D. Pa. 2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id.* Only the first fourteen paragraphs set forth in Barthalow's opposing statement of facts (Doc. 27) correspond to those in DHM's (Doc. 22). Barthalow's paragraphs fifteen through twenty appear to set forth separate statements of fact and the Rule 56.1 statement as a whole does not provide clear responses to paragraphs fifteen through forty of DHM's statement. Accordingly, the court will deem the facts in paragraphs fifteen through forty of DHM's statement to be admitted.

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D.Pa.2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff *see* L.R. 56.1 providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement").

---

[12]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

We agree with Defendants (Doc. 32, pp. 1-3) and find that they are entitled to summary judgment with respect to Plaintiff's remaining First Amendment retaliation and Fourteenth Amendment equal protection claims against them, based on Plaintiff's failure to exhaust these claims.  We also find that Plaintiff, by failing to file a response to Defendants' SMF, and by failing to  properly respond, paragraph by paragraph, to any of Defendants' SMF (Doc. 28, pp. 1-6) as required by Local Rule 56., M.D. Pa., should be deemed as admitting all the statements comprising Defendants' SMF supported by Defendants' evidence.

We agree with Defendants  that their undisputed evidence establishes that the Plaintiff did not exhaust his administrative remedies regarding the two remaining claims against them before he filed the present case.  (Doc. 32, pp. 2-5).  We also find that while Plaintiff argues that he could not exhaust his Administrative remedies with respect to his retaliation claim since it involved a misconduct report issued against him which was not grievable, he does not seem to contest Defendants' claim and evidence that he did not fully exhaust his DOC administrative remedies regarding his Fourteenth Amendment claim against Defendants.  (Doc. 31, pp. 1-3).  Plaintiff states that his Ex. B-1 shows that a claim about inmate discipline is not a grievable issue and that his retaliation claim about the misconduct Defendants issued against him left him with no remedy in the grievance system, namely, he could not exhaust his claim  that he was issued a false misconduct due to his grievances.  (*Id*., p. 3).  Plaintiff also states that the discrimination against him by Defendants "occurred because Plaintiff was also black and a disabled prisoner who filed grievances against the Defendants [and] this [was] why [Plaintiff ] was retaliated on with a false misconduct and put on undue restrictions . . . ."  (*Id*.).

16

There is no dispute that Plaintiff filed a Grievance on June 10, 2006, against Defendant Ayers, # 155041, in which he complained as follows:

> Officer Ayers called me a nigger a monkey and he make monkey noises and called me dumb he keeps lounging on my window while I'm sleep when he is either coming in or going off of E-Block when I wake up he's standing there with his middle finger up I want this harassment to stop.

(Doc. 29, Ex. B-1, p. 1).   The conduct about which Plaintiff complained in his Grievance dated June 10, 2006 that Defendant Ayers committed was the same conduct Plaintiff alleged in his instant Complaint.   Upon initial review, Plaintiff's Grievance of June 10, 2006 was denied as frivolous. (Doc. 29, Ex. B-1, p. 2 and Ex. B, ¶ 12.).   It is also undisputed that Plaintiff did not appeal this stated Grievance any further.   (*Id*.).

It is also undisputed that Plaintiff filed another Grievance regarding the claims raised in his instant Complaint, namely his June 14, 2006 Grievance #155353.   (Doc. 29, Ex. B-1, p. 2 and Ex. B, ¶ 12. and Doc. 31, Ex. B-2).   With respect to Plaintiff's June 14, 2006 Grievance #155353, Taggart, Assistant to the Superintendent at SCI-Camp Hill avers as follows:

> No.  155353 was filed on 6/14/06 against defendants Ayers and Zimmerman and raised, among other things that are a part of the present complaint, the 6/10/06 cell search resulting in an alleged bogus misconduct, B-2.  I rejected the grievance because part of the subject matter involved the allegation of a false misconduct.  *Id.*  Issues that involve misconducts generally should be handled through other procedures.  In any event, Mr.  Spencer did not resubmit a proper grievance.

(Doc. 29, Ex. B, ¶ 13.).

Taggart concludes as follows with respect to Plaintiff's Grievance # 155041 of June 10, 2006 and his June 14, 2006 Grievance #155353:

In sum, a review of the grievances filed by Mr. Spencer during the time period May and June of 2006 indicates Mr. Spencer did file two grievances against one or more Defendants involving some of the conduct contained in the present civil action. However, Mr. Spencer did not exhaust the administrative procedures available by appealing through to final review or resubmitting any grievance rejected for form or content.

In addition, a review of the overall history of grievances filed by Mr. Spencer indicates he had the ability, knowledge and means to appeal some of the denials to the institution level, appeal some of the institutional decisions to the final level of appeal and also resubmitted grievances to the grievance coordinator after they were rejected for form or content.

(Doc. 29, Ex. B, ¶'s 16.-17.).

Thus, Defendants' uncontested evidence shows that the Plaintiff did not exhaust either of his two remaining claims he asserts against Defendants.

Section 1997(a) of the Prison Litigation Reform Act ("PLRA") provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

18

The Third Circuit Court of Appeals has held that the defendant has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002). The Third Circuit has recently stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to fling suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted). The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Id.* Defendants, in their Reply Brief (Doc. 32, p. 3), also correctly point out that there is no exception for alleged futility, citing to *Nyhuis v. Reno,* 204 F. 3d 65 (3d Cir. 2000).

The evidence is undisputed that the Plaintiff has not complied with the exhaustion requirement for either of his stated two June 2006 Grievances, and he is now procedurally defaulted from pursuing the claims contained in either Grievance in this Court. Also, we find no merit to the Plaintiff's argument that he could not grieve a misconduct and that this rendered as futile his attempt to grieve his retaliation claim against Defendants regarding the misconduct report issued against him. As stated, there is no dispute that an inmate cannot grieve a misconduct. (Doc. 32, p. 3). It is also undisputed that Plaintiff filed his June 14, 2006 Grievance #155353 and complained about Defendants' alleged June 10, 2006 conduct which was the basis for his First Amendment retaliation claim against them. It is further undisputed that while Plaintiff stated in his June 14, 2006 Grievance #155353 that he was not grieving the misconduct issued against him, he also stated that he was grieving that the misconduct was a "fabrication" and "a lie" that was "perjury." (Doc. 29, Ex. B-2). Plaintiff further complained in his June 14, 2006

19

Grievance #155353 that the Defendants' alleged conduct on June 10, 2006, was the result of retaliation and discrimination and that it amounted to a deprivation of his due process rights "by them issuing me a bogus misconduct." (*Id*.).

As stated, Taggart rejected Plaintiff's June 14, 2006 Grievance #155353 since part of it complained about a false misconduct report. (Doc. 29, Ex. B, ¶ 13.).  Notwithstanding the fact that Plaintiff stated in his June 14, 2006 Grievance #155353 that he was not grieving about the misconduct issued against him, he also clearly complained that the misconduct was "bogus," a "fabrication" and a "lie" amounting to "perjury."  Since Plaintiff undisputedly referenced the misconduct report issued against him in his June 14, 2006 Grievance # 155353, Taggart rejected it.  However, this did not preclude Plaintiff from filing any grievance about his present First Amendment retaliation claim and his Fourteenth Amendment Equal Protection claim.  As Taggart avers, "issues that involve misconducts generally should be handled through other procedures." (Doc. 29, Ex. B, ¶ 13.).

We find that Plaintiff's circular argument as to why he could not exhaust his present First Amendment retaliation claim, if accepted, would mean that any inmate alleging a First Amendment retaliation claim based on a false misconduct report would never have to exhaust his DOC administrative remedies.  Accepting such an argument as Plaintiff Spencer advances in our case would essentially nullify the PLRA's mandatory exhaustion requirement.  Further, this Court is well aware that numerous inmates file First Amendment retaliation claims in § 1983 civil rights actions and they are able to exhaust their DOC administrative remedies.  *See Bartelli v. Fedak*, 2006 WL 1008996 (M.D. Pa.) (inmate must exhaust his retaliatory false misconduct claim

against prison staff); *Alexander v. Forr*, 2006 WL 2796412 (M.D. Pa.); *Wilson v. Budgeon*, 2006 WL 1410067 (M.D.Pa.).  While Plaintiff did not properly grieve his First Amendment retaliation claim, he could have filed a proper grievance regarding this claim, as Taggart essentially avers. (Doc. 29, Ex. B, ¶ 13.).  However, Plaintiff failed to re-submit a proper grievance with respect to his First Amendment retaliation claim.

As Defendants contend (Doc. 32, p. 4), there is no dispute that Plaintiff did not resubmit a proper grievance without referencing the misconduct issued against him and his claim that it was "bogus," a "fabrication" and a "lie" amounting to "perjury."  (*Id*.).  In any event, as Defendants point out (Doc. 32, p. 4), Plaintiff's two remaining claims in this case are not dependant on the misconduct report issued against him.  Indeed, the District Court has previously dismissed Plaintiff's claim that Defendants issued a false misconduct against him after the June 10, 2006 cell search incident and it dismissed Plaintiff's claim that Defendants issued a false misconduct against him to thwart his attempt to file a grievance against them.  Further, this Court takes judicial notice that many state inmates file First Amendment retaliation claims under §1983 and many allege that they were retaliated against by prison staff who issued misconducts against them because they had filed grievances against staff.  These claims are required to have been exhausted *via* the DOC Administrative remedies process prior to the inmate filing an action in this Court.  *See Bartelli, supra; Alexander, supra; Wilson, supra.*

In *Banks*, the inmate claimed that he was excused form the PLRA's exhaustion requirement because his exhaustion attempts were futile.  The *Banks* Court stated "This argument fails under this Court's bright line rule that 'completely precludes a futility exception to [the PLRA's]

21

mandatory exhaustion requirement.'" *See Banks*, 2007 WL 3096585, * 1.  As stated, the

Defendants' undisputed evidence shows that  Plaintiff failed to properly resubmit  his grievance

concerning Defendants' alleged conduct which form the basis of his present claims  before he

filed this action in this Court.   Thus,  Plaintiff failed to comply with the mandatory exhaustion

requirement under the PLRA.

      As this Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion
> of administrative remedies is required for all actions concerning
> prison conditions brought under federal law.  *See* 42 U.S.C. § 1997e(a);
> *see Woodford v Ngo*, 126 S.Ct. 2378 (2006).  The "exhaustion
> requirement applies to all inmate suits about prison life, whether
> they involve general circumstances or particular episodes, and
> whether they allege excessive force or some other wrong." *Porter v.*
> *Nussle*, 534 U.S. 516 (2002).  "The PLRA attempts to eliminate
> unwarranted federal-court interference with the administration of
> prisons, and thus seeks to afford corrections officials time and opportunity
> to address complaints internally before allowing the initiation of a
> federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and
> citation omitted).  "The benefits of exhaustion can be realized only if the
> prison grievance system is given a fair opportunity to consider the
> grievance." *Id*. at 2388.
>
> The PLRA mandates that inmates "properly" exhaust administrative
> remedies before filing suit in federal court. *Id*. at 2387.  "Proper
> exhaustion demands compliance with an agency's deadlines and
> other critical procedural rules because no adjudicative system can
> function effectively without imposing some orderly structure on the
> course of its proceedings." *Id*. at 2386.  Failure to substantially comply
> with the procedural requirements of the applicable prison's grievance
> system will result in a procedural default of the claim. *Spruill v. Gillis*,
> 372 F.3d 218, 227-32 (3d Cir. 2004).  The PLRA "completely precludes
> a futility exception to its mandatory exhaustion requirement." *Nyhuis v.*
> *Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The *Fortune* Court also stated:

> The PLRA's exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner lawsuits, as well as afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit. *Woodford*, 126 S.Ct. at 2387-88 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). The PLRA exhaustion requirement is satisfied if the Plaintiff files a grievance and appeals the denial of the grievance to the highest level possible, giving the prison "fair notice" of the claim and an opportunity to remedy it. To provide fair notice of a claim, the plaintiff must allege specific acts of mistreatment or misconduct and identify the responsible party or parties. *See Pack v. Martin*, 174 Fed. Appx. 256 (6th Cir. 2006); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Although neither the Third Circuit Court of Appeals nor the Supreme Court has defined how specific an inmate's administrative grievance must be to place the prison on "fair notice" of a claim prior to pursuing it in federal court, the Supreme Court has held that the prisoner's compliance with the agency's applicable administrative remedy process should be the yardstick for making such an assessment. *Woodford*, 126 S.Ct. at 2386; *Spruill*, 372 F.3d at 227-32.

*Id.*, * 9.

We agree with Defendants, and find that, based on the undisputed evidence they have proven (as it is their burden under *Bock*, 127 S. Ct. 921) Plaintiff did not exhaust his stated First Amendment retaliation claim and his Fourteenth Amendment Equal Protection claim.

We find that because the evidence is undisputed that the Plaintiff has not exhausted his administrative remedies with respect to his present claims remaining against Defendants, *i.e.* his Fourteenth Amendment equal protection claim against all three Defendants and his First Amendment retaliation claim against all three Defendants, this Court lacks subject matter

jurisdiction over Defendants.[13]

## VI.  Recommendation.

Based on the foregoing, it is respectfully recommended that the Defendants' Motion for

Summary Judgment **(Doc. 26)** be granted because this Court lacks jurisdiction over the Plaintiff's

action.


**s/ Thomas M.  Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 29 2008**

---

[13]As stated, the exhaustion issue was the only issue raised as an argument in Defendants'
Brief in support of their Motion for Summary Judgment.  (Doc. 27).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAVANNA SPENCER, | : | CIVIL ACTION NO. **3:CV-07-0101** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CO ZIMMERMAN, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 29, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
_____   THOMAS M. BLEWITT
                                        United States Magistrate Judge


**Dated: April 29, 2008**